IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DE'AMONTAE MANNING,

      Plaintiff,

   v.                           Civil Action 1:22-cv-371
                               Judge Michael R. Barrett
                               Magistrate Judge Kimberly A. Jolson

RONALD ERDOS, et al.,

      Defendants.

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order (Doc. 26) and Motion to Appoint Counsel (Doc. 30). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Temporary Restraining Order (Doc. 26) be **DENIED**. Plaintiff's Motion to Appoint Counsel (Doc. 30) is **DENIED**.

### I.    MOTION FOR TEMPORARY RESTRAINING ORDER (DOC. 26)

Plaintiff, a prisoner at the Toledo Correctional Institution ("TCI"), filed a complaint and several supplemental complaints against Defendants. (Docs. 1, 6, 8, 10). Previously, the Undersigned performed an initial screening of Plaintiff's complaint, and recommended that Plaintiff be allowed to proceed only on his Eight Amendment deliberate indifference claims against Defendants Siney Harris, Jeremy Groves, and Ryan Keeney and his First Amendment retaliation claims against Defendants Nicholas Fuller, Patrick Lawrence, Cody Sparks, Nicholas Tipton, Joshua Mulinix, and Dalton Hendrickson. (Doc. 7). Plaintiff has not objected to that recommendation. Additionally, the Court recently allowed Plaintiff to join an additional Defendant, Kory Petiniot, to his retaliation claim. (Doc. 17).

Broadly, Plaintiff alleges that his Eighth Amendment rights were violated in connection

with his April 23, 2022 placement in solitary confinement. (Doc. 1 at 7–8). Plaintiff claims that on that date Defendants officers Jeremy Groves and Ryan Keeney placed him in a cell with no sheets, blankets, socks, towels, washcloth, hygiene products, or other property. (*Id.*). According to Plaintiff, the cell had built up feces in the toilet and on the walls, smoke damage, urine on the floor, and a mattress contaminated with mace. (*Id.*). Plaintiff claims he requested cleaning supplies from Defendants Siney Harris, Groves, and Keeney, but was denied. (*Id.*). He alleges that Defendants Harris, Groves, and Keeney were all aware of the conditions of the cell, deliberately ignored his complaints regarding his cell placement, and left him in the contaminated cells for five days. (*Id.*).

And—relevant here—Plaintiff further alleges that his First Amendment rights have been violated by various Defendants who retaliated against him because of this litigation. (*See* Doc. 6). Plaintiff says that on August 31, 2022, Defendant officer Nicholas Fuller deprived Plaintiff of a mental health examination so that Plaintiff would be placed on continuous observation. (*Id.* at 1). Plaintiff claims that after he was denied the examination Fuller laughed and stated that now Plaintiff would not have access to incoming documents regarding his pending civil lawsuit. (*Id.*). Plaintiff further alleges that on September 4, 2022, Defendant officer Patrick Lawrence threatened him, took property from him (including legal documents), and told other officers and inmates that Plaintiff is a snitch. (*Id.* at 2).

On September 8, 2022, Plaintiff claims he was assaulted by Defendants officers Joshua Mulinix and Cody Sparks. (*Id.*). Plaintiff asserts that these Defendants, in addition to Defendants Lawrence and Nicholas Tipton, told him that they would prevent him from accessing the prison grievance process to preclude him from filing lawsuits. (*Id.*). After reporting to the institutional inspector about these issues, Plaintiff claims Defendants Lawrence, Tipton, and Dalton

2

Hendrickson threatened to assault him, take his property, file false conduct reports against him, harass him until Plaintiff reciprocated, and take documents from him pertaining to his lawsuits. (*Id.* at 3). And finally, he says that Defendant officer Kory Petiniot has tampered with his meals as an act of retaliation. (Doc. 10).

Plaintiff brings the instant Motion asking the Court to intervene in what he says is ongoing retaliatory harassment related to his litigation of this case. (Doc. 26). In particular, he says that some Defendants to this action—and one other prison official—have delayed or destroyed his mail and have denied him showers and recreation. (*Id.*). Previously, the Court indicated that it would construe Plaintiff's Motion as a Motion for Temporary Restraining Order. (Doc. 27 at 2). Defendants responded to the Motion (Doc. 28), and Plaintiff filed another document regarding a Temporary Restraining Order, which the Court understands to be his reply in support of the Motion (Doc. 29). The motion is therefore ripe for review.

"The standard for addressing a motion for a temporary restraining order is the same as the standard applied to a motion for a preliminary injunction." *Ferron v. Search Cactus, L.L.C.*, No. 2:06-CV-327, 2007 WL 2110497, at *1 (S.D. Ohio July 13, 2007) (citation omitted). Both are extraordinary measures, and the movant must meet a high burden to show that such a measure is justified. *See ACLU v. McCreary Cty.*, 354 F.3d 438, 444 (6th Cir. 2003); *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008). Indeed, the proof required to obtain this relief "is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Accordingly, the movant must show more than factual issues—he "must affirmatively demonstrate [his] entitlement to injunctive relief." *Davis v. Caruso*, No. 07-11740, 2008 WL 878878, at *3 (E.D. Mich. Mar. 28, 2008).

When considering whether to grant this extraordinary relief, a district court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation and internal quotation marks omitted).

Under the first factor, to establish a strong likelihood of success on the merits, the movant must demonstrate "more than a mere possibility" of success. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This means that the movant must "show, at a minimum, serious questions going to the merits" of his claims. *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (internal quotation marks and citation omitted). The first factor is often determinative:

> [C]ourts have often recognized that the first factor is traditionally of greater importance than the remaining three. *See Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537 (6th Cir. 1978). In fact, the Sixth Circuit has held that when the proponent of the injunctive relief has no chance of success on the merits of the claim, the Court may dismiss the motion without considering the other three factors. *See Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997). Failure to do so is reversible error. *See id.; Sandison v. Michigan High School Athletic Ass'n,* 64 F.3d 1026, 1037 (6th Cir. 1995).

*Stanley v. Ohio Dep't of Rehab. & Corr.*, No. C2–02–178, 2002 WL 31409435, at *3 (S.D. Ohio August 12, 2002) (denying motion for injunctive relief after evaluation only of chance of success on the merits factor); *see also City of Pontiac Retired Emps. Ass'n*, 751 F.3d at 430 ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor.").

Under the second factor, the movant "must show that irreparable harm absent injunctive relief is 'both certain and immediate, rather than speculative or theoretical.'" *Kensu v. Borgerding*, No. 16-13505, 2018 WL 6540262, at *4 (E.D. Mich. Oct. 31, 2018), *report and recommendation*

*adopted*, No. CV 16-13505, 2018 WL 6527782 (E.D. Mich. Dec. 12, 2018) (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy"); *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (noting that "[a] district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury").

Under the third and fourth factors—harm to others and the public interest—the context of the case matters. In a prisoner civil rights case like this one, "[p]rison administrators [ ] should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 521 (1979). Consequently, "courts, especially federal courts, should be reluctant to become involved in the internal administration" of correctional institutions. *Hanna v. Toner*, 630 F.2d 442, 444 (6th Cir. 1980).

Finally, in addition to the above factors, Plaintiff's case is also subject to § 802 of the Prison Litigation Reform Act (the "PLRA"), which requires preliminary injunctive relief to "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

At the outset, the Undersigned addresses two threshold issues raised by Defendants. First, Defendants say that to the extent Plaintiff asks that Lieutenant James D. Ellis—a non-Defendant—be enjoined by his requested temporary restraining order, that request must be denied. (Doc. 28 at 3–4). The Undersigned agrees. This Court does not have personal jurisdiction over Ellis as a non-

5

party to issue an injunction against him. *See Rutherford v. Warden, S. Ohio Corr. Facility*, No. 1:15-cv-164, 2017 WL 2495202, at *1 (S.D. Ohio June 9, 2017).

Second, Defendants say that Plaintiff's claim in his Motion that Defendants Sparks and Petiniot denied him showers and recreation is only cognizable as a claim about conditions of confinement, unrelated to his claim of retaliation against those same Defendants. (Doc. 28 at 4–5). It is true that a "party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). But the Undersigned disagrees with Defendants that these actions can only be understood to relate to conditions of confinement. If Defendants Sparks and Petiniot are denying Plaintiff showers and recreation to make him adverse from pursuing litigation, then those actions clearly fit into Plaintiff's underlying claim of retaliation. Indeed, that is how they have been characterized by Plaintiff. (Doc. 29 at 1) (requesting that Court enjoin the Defendants from "retaliating against [him] in any form.").

**A. Likelihood of Success on the Merits**

Plaintiff's Motion is directed at Defendants Petiniot, Hendrickson, Fuller, Sparks, Tipton, Mulinix, and Lawrence—the Defendants alleged to have violated Plaintiff's First Amendment rights by retaliation. (*See id.*). A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct'"; and (3) the prisoner's protected conduct, at least in part, motivated the adverse

6

action. *Id.* (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), in turn quoting *Thaddeus-X*, 175 F.3d at 394).

In this case, Plaintiff alleges that various Defendants have harassed and threatened him in retaliation for his litigation. But Plaintiff has not, at least at this early stage of the litigation, adduced sufficient facts to show a strong likelihood of demonstrating a causal connection between the harassment and his litigation. Notable here, "bare allegations of malice [do] not suffice to establish a constitutional claim." *Thaddeus-X*, 175 F.3d at 399. Plaintiff has directly drawn a casual line between adverse action and his protected conduct for only some Defendants. For instance, he alleges that Defendant Fuller denied him a mental examination and told him the reason was to prevent him from having access to documents related to his litigation. (Doc. 6 at 1). Yet, for many of the other Defendants, the causal connections are merely inferential. That, for example, they took property which happened to include legal documents. (*Id.* at 2). Or, that they have engaged in harassment to encourage Plaintiff to "reciprocate negatively[,]" without providing further indication of how that would effect his litigation. (Doc. 8 at 7).

By and large, Plaintiff has not made clear how his protected conduct motivated the adverse actions taken against him. Nor has he supported his allegations of retaliation with evidence. To be sure, direct evidence of retaliation is rare. For that reason, "[c]ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Thaddeus-X*, 175 F.3d at 399. But Plaintiff has not yet built a strong case from circumstantial evidence. Regarding timing, he alleges broadly that the harassment occurred after he initiated this lawsuit, but without further elaboration of how the timing of events demonstrates that Defendants were acting upon knowledge of Plaintiff's lawsuit. And though he has submitted what purports to be an affidavit supported by two other witness inmates (Doc. 11), it simply repeats Plaintiff's

7

allegations of harassment with conclusory claims of retaliation, without providing further context to infer a casual connection between the harassment and protected conduct.

At least at this stage of the litigation—without the aid of time and discovery to develop evidence—Plaintiff has not shown a substantial likelihood of success on the merits of his retaliation claims and, consequently, has not met his burden to justify a temporary restraining order.

### B. Remaining Factors

Briefly, the remaining three factors cannot overcome the often-determinative force of Plaintiff's failure to demonstrate likelihood of success on the merits. Under the second factor, whether Plaintiff will suffer irreparable injury absent injunctive relief, Plaintiff "must show that irreparable harm is 'both certain and immediate, rather than speculative or theoretical.'" *Kensu*, 2018 WL 6540262, at *10 (quoting *Griepentrog*, 945 F.2d at 154). Plaintiff alleges that James D. Ellis, a non-party who is not under the Court's jurisdiction, destroyed a piece of his mail. (Doc. 26 at 1). Otherwise, he alleges only that Defendants have delayed or opened his mail, or that he was denied access to showers and recreation. (*Id.* at 1–2). The Undersigned does not find that this harm is irreparable. Significantly, any delay or interference with Plaintiff's mail has not discernibly affected the present litigation. Plaintiff has not asserted that he has failed to receive anything from the Court, nor that the Court failed to receive any filing from him. Nor has he suggested he unwillingly missed any Court deadlines.

Regarding the third and fourth factors, while a temporary restraining order in this case is unlikely to substantially harm others, the Undersigned "must be mindful of the cautions that apply to issuing an injunction that affects the operation of the prison system, which also shows that the public interest would not be served by issuing the injunction." *Carter v. Mich. Dep't of Corr.*,

8

2013 WL 5291567, at *6 (E.D. Mich. Sep. 19, 2013). In other words, "[t]he public interest in leaving the administration of federal prisons to federal prison administrators is another factor weighing against" a temporary restraining order in this case. *Winn v. Waugaman*, 2015 WL 1606151, at *5 (Apr. 8, 2015).

At base, because Plaintiff has failed to demonstrate a strong likelihood of success on the merits, failed to demonstrate that the purported harm he faces is irreparable, and because courts must be reluctant to become involved in the administrative decisions of prisons, the Undersigned **RECOMMENDS** that Plaintiff's Motion for Temporary Restraining Order (Doc. 26) be **DENIED**. And, instead, this case will continue with the discovery process.

## II.    MOTION TO APPOINT COUNSEL (DOC. 30)

Plaintiff also requests that the Court appoint him counsel to assist in the litigation of this case. (Doc. 30). As the Court previously stated in denying a similar motion (*see* Doc. 17 at 3), the appointment of counsel in a civil proceeding is not a constitutional right and is justified only by exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993); *see also Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003). The Court makes every effort to appoint counsel in those cases which proceed to trial, and in exceptional circumstances will attempt to appoint counsel at an earlier stage of the litigation. But no such circumstances appear in this case. Therefore, Plaintiff's Motion to Appoint Counsel (Doc. 30) is **DENIED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination

9

of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: May 30, 2023　　　　　　　　　　　　　　/s/ Kimberly A. Jolson
　　　　　　　　　　　　　　　　　　　　　　KIMBERLY A. JOLSON
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE