**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DE'AMONTAE MANNING,

        **Plaintiff,**

v.

        Civil Action 1:22-cv-371
        Judge Michael R. Barrett
        Magistrate Judge Kimberly A. Jolson

RONALD ERDOS, et al.,

        **Defendants.**

**ORDER AND REPORT AND RECOMMENDATION**

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 100) and Defendants' Motion for Summary Judgment (Doc. 107). The Undersigned **RECOMMENDS** that Plaintiff's Motion be **DENIED** and that Defendants' Motion be **GRANTED**. Also before the Court is Plaintiff's Motion to Appoint Counsel, (Doc. 94), which the Court **DENIES**. Finally, the Court **DECLINES** to sanction Defendants for failing to preserve video footage Plaintiff requested during discovery.

**I.    BACKGROUND**

Plaintiff, a prisoner at the Cuyahoga County Jail proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against ten Defendants employed by the Southern Ohio Correctional Facility (SOCF) and Toledo Correctional Institution (TOCI). Plaintiff alleges that, during his incarceration at those prisons in 2022, Defendants violated his constitutional rights by holding him in an unsanitary cell and repeatedly retaliating against him. (*See generally* Docs. 1, 6, 10).

Beginning with the first incident, on April 23, 2022, Defendants Groves and Keeney placed Plaintiff in a solitary confinement cell at SOCF. (Doc. 1 at 7). According to Plaintiff, the cell contained no bedding, socks, towels, washcloths, hygiene products, or other property. (*Id.*). The

cell was also "contaminated" with feces in the toilet and on the walls, urine on the floor, and mace on the mattress. (*Id.*). So, on April 23, Plaintiff says he asked Defendants Groves and Keeney for cleaning supplies, but they told him to "ask first shift." (*Id.*). The next day, Plaintiff claims he asked Defendant Harris for cleaning supplies after "showing [him] the conditions of the cell." (*Id.*). He, too, ignored Plaintiff's request. (*Id.* at 7–8). In total, Plaintiff stayed in the cell for five days before being moved elsewhere. (*Id.* at 8).

Because of this stay in solitary confinement, Plaintiff filed this action on June 27, 2022. (*Id.* at 7–8). Sometime in August, Plaintiff was transferred to TOCI. (*See* Doc. 5 (notice of address change dated August 22, 2022)). Plaintiff alleges that shortly after his transfer, Defendant Fuller instructed a mental health liaison at TOCI to deny Plaintiff a mental health examination. (Doc. 6 at 1). After the denial, Defendant Fuller laughed and told Plaintiff he would have "no access to any incoming legal documents pertaining [to his] civil suit." (*Id.*). Five days later, Defendant Lawrence threatened to "mace" Plaintiff, take and destroy his property and legal documents, and inform others at TOCI that Plaintiff was a "snitch." (*Id.* at 2). Then, on September 8, Plaintiff alleges that Defendants Mulinix and Sparks also retaliated against him by assaulting him. (*Id.*).

According to Plaintiff, the retaliation continued. On September 14 and 19, Defendants Lawrence, Hendrickson, and Tipton threatened to assault him, take his property, write false conduct reports, and continue their harassment until Plaintiff "reciprocate[d] negatively." (*Id.* at 2–3). Then, on November 2, Plaintiff says Defendant Petiniot tampered with his meals. (Doc. 10). Based upon these allegations, the Undersigned allowed Plaintiff to proceed on an Eighth Amendment conditions of confinement claim against Defendants Harris, Groves, and Keeney and on multiple First Amendment retaliation claims against Defendants Mulinix, Sparks, Lawrence, Hendrickson, Tipton, and Petiniot. (Docs. 7, 10).

2

But litigation did not progress smoothly. During the pendency of this case, Plaintiff brought multiple motions to compel discovery. (Docs. 48, 53, 56, 64, 66, 74, 84). Many of those motions requested video footage of the above-described events. (*See* Doc. 89 at 6–7 (summarizing the parties' relevant litigation over video footage)). Eventually, on March 15, 2024, Defendants informed the Court that much of the footage had been destroyed. (Doc. 86). As a result, on April 1, 2024, the Court ordered Defendants to show cause why they should not be sanctioned for failing to preserve the footage. (Doc. 89).

In response to the show cause order, Defendants said that much of the footage was deleted according to the Ohio Department of Rehabilitation and Corrections's (ODRC) retention policies. (*See* Doc. 91). All told, only footage for the September 8, 2022, incident involving Defendants Mulinix and Sparks exists. (Doc. 97 at 6–7). That video contains just a few minutes of the parties' interactions that day, and Plaintiff claims that the alleged assault occurred prior to the events captured on video. (*Id.* (noting that only footage for 7:43 AM to 7:53 AM exists)). After examining Defendants' response to the Court's show cause order, the Undersigned reserved the issue of sanctions until a later stage of litigation. (*Id.* at 15). Around the same time, Plaintiff filed a motion for appointment of counsel, (Doc. 94), which the Court also held in abeyance until it became clear "which of Plaintiff's claims [would] proceed" to trial. (Doc. 97 at 16).

The parties then filed cross-motions for summary judgment. (Docs. 100, 107). Those motions, along with Plaintiff's request for counsel and the issue of sanctions, are now ripe for the Court's consideration. (*See* Docs. 94, 97, 100, 107, 113, 114).

**II. STANDARD**

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Ultimately, the Court asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

**III. DISCUSSION**

Because the parties' summary judgment motions address the same issues, the Court considers them in tandem. (Docs. 100, 107). On the whole, Plaintiff's Motion repeats his allegations and argues that the pleadings and Defendants' discovery responses show he is entitled to summary judgment. (*See* Doc. 100 at 1). For their part, Defendants assert that many of Plaintiff's allegations are untrue or that the events underlying this case did not transpire in the way Plaintiff describes. (Doc. 107 at 9–10). Defendants argue they should be granted summary judgment for two reasons. First, they say that Plaintiff failed to exhaust his administrative remedies for almost all his retaliation claims. (*Id.* at 17). Second, they say Plaintiff's other claims fail as a matter of law. (*Id.* at 23–26, 31–33).

4

The Court begins with the exhaustion issue and then turns to Plaintiff's remaining claims.

### A. Unexhausted Retaliation Claims

Defendants assert that Plaintiff failed to exhaust his administrative remedies for his retaliation claims against Defendants Fuller, Lawrence, Hendrickson, Tipton, and Petiniot. (Doc. 107 at 17). After reviewing the grievance records submitted by the parties, the Undersigned agrees.

"Exhaustion of administrative remedies 'is mandatory under the Prison Litigation Reform Act (PLRA) and . . . unexhausted claims cannot be brought in court.'" *Murray v. Ohio Dep't of Corr.*, No. 1:14-cv-168, 2019 WL 485214, at *13 (S.D. Ohio Feb. 7, 2019) (quoting *Jones v. Bock*, 549 U.S. 199, 211 (2007) (cleaned up)). To properly exhaust a claim, a prisoner must take "advantage of each step the prison holds out for resolving the claim internally" and follow "the 'critical procedural rules' of the prison's grievance procedure." *Reed-Bey v. Pramstaller,* 603 F.3d 322, 324 (6th Cir.2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)). Once a prisoner files suit in federal court, exhaustion of administrative remedies "is an affirmative defense that must be proved by the defendant." *Lamb v. Kendrick,* 52 F.4th 286, 292 (6th Cir. 2022).

Ohio prisoners must follow a three-step grievance procedure for "complaints related to any aspect of institutional life." *See* Ohio Admin. Code § 5120-9-31(J); (Doc. 107 at 20 (summarizing Ohio's prison grievance process)). To start the process, a prisoner must file an informal complaint within "fourteen calendar days of the date of the event giving rise to the complaint." *Id.* at § 5120-9-31(J)(1). This complaint must be filed with the direct supervisor or department "most directly responsible for the particular subject matter of the complaint." *Id.* Second, "[i]f the inmate is dissatisfied with the informal complaint response," he may file a notification of grievance with the inspector of institutional services. *Id.* at § 5120-9-31(J)(2). If the prisoner is still unhappy with the response to his grievance, he "may file an appeal with the office of the chief inspector." *Id.* at

5

§ 5120-9-31(J)(3). Once the chief inspector decides the appeal, the prisoner's administrative remedies are exhausted. *Id.*; *Ball v. Ohio*, No. 2:20-cv-1759, 2020 WL 1956836, at *3 (S.D. Ohio Apr. 23, 2020) ("An inmate does not exhaust his remedies under § 5120-9-31 until he has received a decision in an appeal to the office of the Chief Inspector."), *report and recommendation adopted*, No. 2:20-cv-1759, 2020 WL 2468742 (S.D. Ohio May 13, 2020).

Defendants concede that Plaintiff exhausted his conditions of confinement claim and his September 8, 2022, retaliation claim involving Defendants Harris, Groves, Keeney, Mulinix, and Sparks. (Doc. 107 at 17). But they say the remaining claims were not properly grieved. (*Id.* at 17, 20–22). In support, Defendants provide all the grievances Plaintiff filed between August 31, 2022, and November 30, 2022—the time period relevant to his retaliation claims against Defendants Fuller, Lawrence, Hendrickson, Tipton, and Petiniot. (*See* Doc. 107 at 21; Doc. 106-4; *see also* Docs. 8, 10 (alleging the events underlying these retaliation claims took place on August 31, September 4, September 14, September 19, and November 2, 2022)).

These records definitively show that Plaintiff did not complete the required three-step process for his claims against those Defendants. Specifically, for the September 4 and November 2 incidents involving Defendants Lawrence and Petiniot, Plaintiff completed the grievance process only through step two. (Doc. 106-4 at 1–4 (grievance regarding Defendant Lawrence for September 4), 37–39 (grievance against Defendant Petiniot for November 2)). For the August 31 claim against Defendant Fuller, Plaintiff stopped at step one. (*Id.* at 5–6 (grievance regarding Defendant Fuller for August 31)). For the remaining dates, Plaintiff did not file any grievances that can be reasonably attributed to the allegations underlying his claims against Lawrence, Hendrickson, and Tipton. (*See generally* Doc. 106-4 (containing no grievances filed by Plaintiff against these Defendants for events on September 14 and September 19)).

6

Still, Plaintiff contends that he "exhausted all administrative remedies adequately" and that issues with the "new process for the grievance procedure . . . on the GTL tablets" is to blame for his failure to complete all three steps. (Doc. 113 at 3 (cleaned up)). But importantly, his claims against Defendants Fuller, Lawrence, Hendrickson, Tipton, and Petiniot involve events that took place at TOCI. (*See* Doc. 8 (clarifying that these events took place at TOCI); Doc. 113 at 9, 11, 15 (listing TOCI as the facility for several of Plaintiff's grievances)). That institution did not use GTL tablets for prisoner grievances between August 31 and November 30, 2022. (Doc. 106-5 at 2 (stating prisoners at TOCI could submit complaints, grievances, and appeals through paper forms or through an electronic system called JPay); *see also* Doc. 113 at 11–14 (grievances filed by Plaintiff through JPay, not GTL, for incidents at TOCI during this time); Doc. 106-4 at 1, 13, 37 (same)). What's more, the other documents Plaintiff cites further support Defendants' assertion that he did not complete the grievance process. (*See* Doc. 113 at 9–10 (showing Plaintiff did not proceed after step one for his complaint against Defendant Fuller), 15–16 (stating Plaintiff abandoned his grievance against Defendant Petiniot after step two); *see also id.* at 9–20 (offering no grievances for the September 14 and September 19 retaliation claims against Defendants Lawrence, Hendrickson, and Tipton); Doc. 100 at 6–7 (stating that he exhausted his administrative remedies against Defendants Fuller and Petiniot but providing no explanation or citations in support)).

In short, because Plaintiff failed to complete the three-step grievance process for these claims, Defendants Fuller, Lawrence, Tipton, Hendrickson, and Petiniot are entitled to summary judgment. The Court now turns to Plaintiff's exhausted claims.

### B. Conditions of Confinement Claim

Plaintiff argues that Defendants Harris, Groves, and Keeney violated the Eighth Amendment by placing him in an unsanitary cell for five days without bedding, hygiene products, and other property and by denying his requests for cleaning supplies on April 23 and April 24, 2022. (Doc. 1 at 7–8; Doc. 100 at 5–6; Doc. 113 at 2–3). Defendants respond that the cell was cleaned prior to Plaintiff's placement and that cleaning supplies were available to him. (Doc. 107 at 11; Doc. 106-1 at 1–2). Further, they assert that Defendant Harris did not work at TOCI on April 24, 2022, so he could not have interacted with Plaintiff as alleged. (Doc. 106-1 at 1–2; Doc. 106-2). And finally, Defendants say that Plaintiff's allegations, even if true, do not meet the Eighth Amendment's high bar. (Doc. 107 at 24–26).

Although the Eighth Amendment prohibits inhumane conditions in prisons, it "does not mandate comfortable" ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Said differently, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987); *see also Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) ("[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional."). At base, the "Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 F.App'x 448, 454–55 (6th Cir. 2011) (quoting *Rhodes*, 452 U.S. at 348). Consequently, to succeed on a conditions of confinement claim, a prisoner must satisfy both an objective and a subjective component. *Id.* at 455. The objective component requires the deprivation to be "sufficiently serious," meaning that the prisoner was denied "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. The subjective component focuses on the prison

8

official's state of mind. *Id.* Specifically, to violate the Eighth Amendment, the prison official must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotation and quotation marks omitted).

Ultimately, conditions of confinement claims are "highly fact-specific." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). Courts must consider "all the prison's conditions and circumstances, rather than isolated conditions and events." *Walker v. Mintzes*, 771 F.2d 920, 925 (6th Cir. 1985). "[O]ne guiding principle is . . . the length of exposure to the conditions" at issue, since temporary inconveniences, even serious ones, do not amount to constitutional violations. *Lamb*, 677 F. App'x at 209. To summarize, courts should examine "the interrelationship between the severe conditions and their duration, coupled with any other relevant evidence in the record" when addressing these types of Eighth Amendment claims. *Francis v. Altiere*, 491 F. App'x 539, 543 (6th Cir. 2012).

After considering the alleged circumstances here, the Undersigned finds that the type, severity, and duration of the conditions Plaintiff describes are not the sort that violate the Eighth Amendment. Plaintiff's account of the cell is not incredibly detailed. For instance, while he says that the cell contained feces, urine, and mace, he does not describe the extent of the contamination. (*See* Doc. 1 at 7; Doc. 100 at 5; Doc. 113 at 2–3). Notably, he does not allege an extreme lack of sanitation. (*See* Doc. 1 at 7 (saying that there was "built up" feces in the toilet, but otherwise just noting feces, urine, and mace were present)); *cf. Taylor v. Riojas*, 592 U.S. 7, 7–10 (2020) (holding that a prisoner's confinement violated the Eighth Amendment where he was kept for six days in a cell "covered, nearly floor to ceiling in massive amounts of feces: all over the floor, the ceiling, the window, the walls, and packed inside the water faucet" (internal quotations and quotation marks omitted)). Plus, Plaintiff's stay in the cell was temporary and lasted only five days. (Doc.

9

1 at 7–8). When faced with similar circumstances to Plaintiff's, courts have repeatedly held that short-term and unextreme exposures to feces, sewage, and chemical agents do not violate the Eighth Amendment. *See, e.g.*, *Brown v. Mahlman*, No. 1:22-cv-239, 2022 WL 17817615, at *3 (S.D. Ohio Dec. 19, 2022) (nine days in a prison cell contaminated with blood, OC spray, and sewage); *Edge v. Mahlman*, No. 1:20-cv-892, 2021 WL 3725988, at *5 (S.D. Ohio Aug. 23, 2021) (hours in a cell with feces and urine on one wall and a "white dry film" on the sink and toilet); *Taylor v. Wright*, No. 20-13041, 2023 WL 5822761, at *2–3 (E.D. Mich. Apr. 19, 2023) (twenty-day stay in a "filthy cell" without cleaning supplies); *Keltner v. Cook*, No. 3:16-cv-179, 2017 WL 2468972, at *3 (E.D. Tenn. June 7, 2017) (five-day period "around stopped up toilets" without a shower or clean clothes); *Perkins v. Bailey*, No. 1:20-cv-1029, 2021 WL 868887, at *8 (W.D. Mich. Mar. 9, 2021) (five days in a cell with clogged drains, dirty walls, mold, and a "leach").

Plaintiff's claim still fails when the Court considers the cell's conditions alongside his lack-of-access to bedding, towels, socks, hygiene products, and cleaning supplies. Precedent is clear that temporary deprivations of bedding, clothing, hygiene products, and cleaning supplies do not violate the Eighth Amendment. *See Richmond*, 450 F. App'x at 455 (no hygiene products for six days and no mattress or bedding for one day); *Watison v. Perry*, No. 23-5059, 2024 WL 3461194, at *2–3 (6th Cir. Feb. 15, 2024) (denied personal hygiene products, cleaning supplies, clothing, bedding, and other property for eight days); *Johnson v. Cool*, No. 1:22-cv-31, 2024 WL 3992412, at *9–10 (S.D. Ohio Aug. 29, 2024) (21-day stay in a dry cell without running water, a mattress, underwear, sanitizer wipes, and eczema medication); *Hood v. Moore*, No. 7:18-cv-124, 2021 WL 4035004, at *8 (E.D. Ky. Sept. 3, 2021) (no access to hygiene products, bedding, clean clothing, or towels for three days); *Taylor*, 2023 WL 5822761, at *3–4 (denied cleaning supplies and clean clothes for twenty days). The result is the same even when such deprivations are alleged in

10

combination with unsanitary cell conditions. *See Taylor*, 2023 WL 5822761, at *2–3 (twenty-day stay in a dirty cell combined with a denial of clean clothes and cleaning supplies); *Moore v. Goulet*, No. 1:22-cv-279, 2023 WL 6050393, at *5 (W.D. Mich. Aug. 21, 2023) (multiple days in a cell with sewage and flooding issues with no access to cleaning supplies); *Keltner*, 2017 WL 2468972, at *2–3 (six-day period in a cell with stopped up toilets and no showers or clean clothes); *McNatt v. Unit Manager Parker*, No.3:99-cv-1397, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (six-day stay in an unclean cell with dirty mattresses and no bedding, cleaning supplies, hygiene products, cold water, and clean clothes).

Also fatal to the objective component of his claim, Plaintiff cannot show he faced a "substantial risk of serious harm" or suffered an injury due to these conditions. *Edge*, 2021 WL 3725988, at *6. At the outset of this case, Plaintiff did not allege any harms caused by his solitary confinement, (Doc. 1 at 7–8 (alleging no injuries)), but he now claims he experienced breathing difficulties and contracted the COVID-19 virus as a result. (Doc. 113 at 2 (saying that the conditions of the cell "resulted in [him] getting COVID" and "affected [his] oxygen," and that the mace on the mattress "suffocate[d]" him)). Plaintiff cites no evidence to support these allegations, such as a medical record or even an unsworn declaration attesting to his version of events. (*See* Doc. 113 at 2); *Claggett v. Wenzler*, 397 F.Supp.3d 1054, 1064 (S.D. Ohio July 12, 2019) ("Rule 56 requires the nonmoving party to go beyond the unverified pleadings and present some type of evidentiary material in support of its position." (internal quotation and quotation marks omitted)). Nor does he describe the length or severity of his alleged illness. (Doc. 113 at 2). Put simply, Plaintiff's conclusory statements about his injuries cannot overcome the fact that the alleged conditions of his cell were not so extreme as to violate the Eighth Amendment. *See Taylor*, 2023 WL 5822761, at *4 (dismissing an Eighth Amendment claim where the plaintiff's cell was not so

11

unclean during his 20-day stay as to violate the Constitution, even though the plaintiff alleged that he contracted a disease on his buttocks); *Moore*, 2023 WL 6050393, at *5 (finding a prisoner's speculation about potential exposure to diseases and his unsupported allegation of an eye infection insufficient for his conditions of confinement claim to survive past summary judgment).

Since Plaintiff does not satisfy the objective component, Defendants are entitled to summary judgment. But Defendants also offer evidence that Plaintiff cannot meet the subjective prong. Although Plaintiff says that Defendants Harris, Groves, and Keeney were aware of his cell's contamination and denied him cleaning supplies, Defendants avow that cleaning supplies are available to prisoners "in all housing blocks." (Doc. 1 at 7–8; Doc. 106-1 at 2 (affidavit from Defendant Harris)). Additionally, Defendant Harris provides an affidavit and records showing he was not at TOCI on April 24, so he could not have seen Plaintiff's cell or denied him supplies that day. (Docs. 106-1, 106-2). Importantly, Plaintiff does not meaningfully challenge this evidence. (Doc. 113 at 2–3). Because he must present more than unsworn allegations at this stage, Plaintiff fails to show Defendants were deliberately indifferent to his serious needs. *See Richmond*, 450 F. App'x at 455 (discussing that the subjective prong requires a showing that "prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs"); *Maston v. Montgomery Cnty. Jail Med. Staff Personnel*, 832 F.Supp.2d 846, 851–52 (S.D. Ohio 2011) (noting parties cannot rely on unsworn filings at summary judgment); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989) (saying if a plaintiff cannot meet his burden of proof after discovery, the Court should grant summary judgment).

For these reasons, summary judgment is appropriate for Plaintiff's conditions of confinement claim against Defendants Harris, Groves, and Keeney. The Court now examines Plaintiff's last First Amendment retaliation claim.

### C. September 8, 2022, Retaliation Claim

On September 8, 2022, Plaintiff alleges that Defendants Mulinix and Sparks retaliated against him by kneeing, kicking, and dragging him after he sat down on the floor because of "weakness" from his hunger strike. (Doc. 100 at 3). After the assault, they allegedly called Plaintiff a "snitch" and said they would deny him access to the prison's "grievance procedure" to prevent him from filing a lawsuit. (Doc. 6 at 2). Defendants respond that these allegations are wholly false and lodge two challenges to the claim. (Doc. 107 at 13, 27). First, they say that Plaintiff fails to allege that he engaged in protected conduct. (*Id.* at 32–33). Second, they argue that Plaintiff cannot establish that Defendants Mulinix and Sparks were motivated by that conduct during their interaction with Plaintiff. (*Id.* at 34–35).

To succeed on a First Amendment retaliation claim, a prisoner must establish three elements: "(1) he engaged in protected conduct, (2) the defendant took an adverse action . . . capable of deterring a person of 'ordinary fitness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in party by the prisoner's protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (cleaned up).

To begin, Plaintiff's allegations, even when construed liberally, do not clearly identify what protected activity underlies this claim, though he hints at some possibilities. (Doc. 6 at 1–2 (generally discussing this lawsuit and his attempts at filing grievances); Doc. 100 at 3 (mentioning his hunger strike)). But even assuming Plaintiff engaged in protected conduct, he fails to establish the third element of his retaliation claim—a causal connection between the assault and his protected activity. (Doc. 6 at 2). Although Plaintiff calls the assault retaliation, he does not provide any evidence, direct or circumstantial, that Defendants knew that Plaintiff engaged in protected

13

conduct and assaulted him as a result. (*See* Doc. 6; Doc. 100 at 3; Doc. 113 at 2–3); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (saying that "conclusory allegations of retaliatory motive unsupported by material facts" are not enough for a retaliation claim to proceed to trial). Meanwhile, Defendants Mulinix and Sparks provide affidavits explaining that their interaction with Plaintiff that day was motivated solely by Plaintiff's flooding of his cell. (Doc. 106-9; Doc. 106-10). Left with only Plaintiff's conclusory allegations and Defendants' unrebutted evidence, the Court cannot conclude a genuine issue remains for trial for this claim. As such, Defendants Mulinix and Sparks are entitled to summary judgment.

**D.     Other Issues**

With that, two matters remain before the Court: the appropriateness of sanctions for Defendants' failure to preserve video footage and Plaintiff's motion for appointment of counsel. (*See* Docs. 94, 97).

First is the issue of sanctions. In a previous order, the Court discussed the history of the parties' discovery efforts at length, including Plaintiff's many requests for video evidence. (*See generally* Doc. 97 (addressing Defendants' response to the Court's show cause order)). After doing so, the Court found that Defendants should have preserved at least some of the wall camera footage Plaintiff requested during this lawsuit. (*Id.* at 14). But the Undersigned reserved the issue of sanctions until the evidence underlying the parties' arguments was more developed. (*Id.* at 15 ("At this point, however, the Court has limited evidence for the claims and defenses in this case other than the parties' representations.")).

Now, upon careful review of the record, the Undersigned concludes that sanctions are not warranted here. To start, the Court cannot say that Plaintiff was significantly prejudiced by the loss of the video footage. *See McCarty v. Covol Fuels No. 2, LLC*, 644 F. App'x 372, 379 (6th

14

Cir. 2016) (noting that "a party seeking a spoliation sanction must make some showing indicating that the destroyed evidence would have been relevant to the contested issue"). Most of Plaintiff's claims fail because he did not exhaust his administrative remedies—a fault that would not have been helped by video footage of the alleged events.

Plaintiff's exhausted claims also lose for reasons that video footage could not cure. For context, the wall cameras at issue here do not record audio, and they do not show the inside of prisoners' cells. (*See* Doc. 91 at 3; Doc. 97 at 14). So, for Plaintiff's conditions of confinement claim, even if footage from April 23 and 24, 2022, still existed, it would not show the conditions of Plaintiff's cell. (*See id.*). As a result, the video could not have helped Plaintiff show that his cell was unsanitary enough to meet the Eighth Amendment's objective standard. Video also would have been unhelpful for his retaliation claim based on the alleged assault. As discussed above, Defendants are entitled to summary judgment for this claim because Plaintiff (1) fails to allege that he engaged in protected conduct, and (2) does not show a causal connection between his conduct and the alleged assault. Largely, these are pleading issues on Plaintiff's part, and video could not have helped him fix these deficiencies. For instance, because the wall cameras do not record audio or the inside of prisoners' cells, additional footage would not show Plaintiff engaging in protected conduct before the assault, like filing grievances, working on his lawsuit, or participating in his hunger strike. (Doc. 97 at 14; Doc. 91 at 3). Further, the footage would not help Plaintiff connect those actions to the assault. Specifically, if Defendants made statements before, during, or after the assault, those remarks would not have been captured by the cameras. (Doc. 91 at 3 (noting the cameras do not capture audio); Doc. 6 at 2 (discussing statements Defendants allegedly made after the assault)).

At base, "[i]mposing sanctions for spoliation of evidence has two purposes: (1) leveling

the evidentiary playing field and (2) sanctioning improper conduct." *Clemons v. Corr. Corp. of Am., Inc.*, Nos. 1:11-cv-339, 1:11-cv-340, 2014 WL 3507299, at *17 (E.D. Tenn. July 14, 2014) (internal quotation omitted). Here, the Undersigned finds that the footage, even if preserved, could not have done much to help Plaintiff's claims. In that way, sanctions would not remedy the parties' evidentiary advantages or disadvantages. More still, the footage at issue was destroyed according to ODRC's video retention policies, which allow between fourteen and forty-five days to retrieve footage before it is automatically overwritten. (Doc. 97 at 4–5). Although this fact alone does not save Defendants from sanctions, the Court concludes that their preservation failures seemingly arise out of negligence at most, not bad faith. (*See* Doc. 97 at 14 (noting the footage was not intentionally destroyed)); *Adkins v. Wolever*, 692 F.3d 499, 506–07 (6th Cir. 2012) (finding the district court did not abuse its discretion in denying a spoliation sanction for the destruction of video where the prison officials followed retention policies); *Marcum v. Scioto Cnty.*, No. 1:10-cv-790, 2014 WL 3955874, at *16 (S.D. Ohio Aug. 13, 2014) (finding spoliation sanctions not warranted where video was lost due to negligence). While the Court has broad discretion to sanction parties for spoliation of evidence, *Adkins*, 692 F.3d at 503, given the minimal evidentiary value of the footage at issue and Defendants' relatively low degree of culpability, the Court declines to exercise that discretion here.

That leaves only the issue of counsel. Previously, the Court held Plaintiff's motion to appoint counsel in abeyance until the Court could be "certain which of Plaintiff's claims [would] proceed past dispositive motions to trial." (Doc. 97 at 16). Because the Undersigned now recommends that all of Plaintiff's claims be dismissed, Plaintiff's Motion to Appoint Counsel (Doc. 94) is **DENIED**.

**IV.	CONCLUSION**

The Undersigned **RECOMMENDS DENYING** Plaintiff's Motion for Summary Judgment (Doc. 100) and **GRANTING** Defendants' Motion for Summary Judgment (Doc. 107). Additionally, the Undersigned **DECLINES** to sanction Defendants for not preserving video footage and **DENIES** Plaintiff's Motion to Appoint Counsel (Doc. 94).

IT IS SO ORDERED.

Date: December 11, 2024	/s/ Kimberly A. Jolson
	KIMBERLY A. JOLSON
	UNITED STATES MAGISTRATE JUDGE

**Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).  The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).